**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GARY TURNER and ANA MARIA TURNER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-435-CJB |
| | ) | |
| LAM RESEARCH CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

---

Antranig Garibian, GARIBIAN LAW OFFICES, P.C., Wilmington, DE; T.J. Jesky, LAW OFFICE OF T.J. JESKY, Chicago, IL; Attorneys for Plaintiffs.

Ryan D. Stottmann, Emily C. Friedman, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Attorneys for Defendant.

---

**<u>MEMORANDUM OPINION</u>**

November 13, 2024
Wilmington, Delaware



**BURKE, United States Magistrate Judge**

Presently pending before the Court in this civil matter is a motion to dismiss ("Motion") filed by Defendant Lam Research, Corp. ("Defendant" or "Lam") pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 6) The Motion is opposed by Plaintiffs Gary Turner ("Turner") and Ana Maria Turner ("Mrs. Turner," and collectively with Turner, "Plaintiffs"). For the reasons set forth below, the Motion is GRANTED on *forum non conveniens* grounds.

## I.    BACKGROUND

### A.    Factual Background

Turner worked for Lam Research Corporation in California from April 1984 through September 1989. (D.I. 1 at ¶ 15) In September 1988, Turner received 2,375 (pre-split) common shares from the company as a stock bonus. (*Id*. at ¶¶ 15, 17, 27) He was issued a corresponding stock certificate on September 2, 1988 by Defendant's authorized transfer agent Bank of America, National Trust and Savings Association (San Francisco) ("Bank of America"). (*Id*. at ¶¶ 1, 18-19) The stock certificate was issued to Turner by mail, and it states that the shares of common stock were "FULLY PAID AND NON-ASSESSABLE[.]" (*Id*. at ¶ 19; *id*., ex. A)[1]

At the time that the original stock certificate was sent to Turner, Lam Research Corporation was a California corporation ("Lam California"). (*Id*. at ¶ 20) In March 1989, Lam California merged with a Delaware corporation also known as Lam Research Corporation and re-domiciled in Delaware.[2] (*Id*. at ¶¶ 21-22; *id*., ex. C) The corresponding Agreement and Plan

---

[1]    Though the stock certificate was issued to Turner, he and Mrs. Turner are married, (D.I. 1 at ¶ 1), and as a result, Plaintiffs refer to the stock at issue as "Plaintiffs'" stock throughout their briefing. The Court will do the same at times below as well.

[2]    For ease of reference, the Court will simply refer to the surviving company post-merger as "Defendant."

2

of Merger regarding this transaction stated, in relevant part, that: (1) shareholders of Lam California's common stock could "surrender [their stock certificate] for cancellation to Bank of America, and in turn would be "entitled to receive in exchange therefore a certificate or certificates representing the number of shares of [Defendant] into which the surrendered shares were converted"; (2) until Lam California's shareholders surrendered their stock, their stock certificates "shall be deemed for all purposes to represent the number of whole shares of the surviving [corporation's stock]"; and (3) registered owners of Lam California's stock certificates had the right, until they surrendered those certificates, to "exercise any voting and other rights with respect to and to receive dividends and other distributions upon the shares of Common Stock of the surviving [c]orporation represented by [their] outstanding certificate[.]"  (D.I. 1 at ¶ 23; *id*., ex. C at § 3.4)

Turner still has his original Lam California stock certificate.  (D.I. 1 at ¶ 24)  Plaintiffs therefore assert that this indicates that Turner did not surrender his shares or exchange his certificate for a certificate relating to Defendant's common stock.  (*Id*. at ¶¶ 24-26)

Since the original shares were first issued to Turner, Defendant's stock has split on two different occasions; as a result, Turner's original 2,375 shares now equate to 10,688 shares of Defendant's common stock.  (*Id*. at ¶¶ 1, 27)  These 10,688 shares are alleged to be currently worth approximately $5 million.  (*Id*. at ¶ 30)  Plaintiffs recently decided that they wanted to sell these shares, but when they tried to deposit the shares with a stockbroker in order to sell them, they were informed that Defendant's current transfer agent (a company known as Computershare, Inc. ("Computershare")) had no record of Turner ever having owned the shares. (*Id*. at ¶¶ 2, 32-34)  Plaintiffs attribute the missing records regarding Turner's ownership to

Defendant's change in transfer agents over the years from Bank of America to BNY Mellon to Computershare. (*Id*. at ¶¶ 2, 34, 35)

Plaintiffs filed the instant action to "restore [Turner's] validly issued and non-assessable stock ownership registered on the transfer agent books of Lam Research Corporation." (*Id*. at ¶ 2; *id*. at 9)

### B.    Procedural History

Plaintiffs commenced this action by filing the operative Complaint on April 20, 2023. (*Id*.) The Complaint alleges two counts against Defendant. (*Id*. at ¶¶ 46-53) Count I is a claim for breach of fiduciary duty; therein, Plaintiffs allege that "[Defendant] and its past authorized transfer agents/stock registrars owed Plaintiffs a fiduciary duty, including the duty of care, loyalty, [and] good faith to maintain accurate records to verify stock ownership" and that "[b]y failing to timely keep accurate records, the Defendants [sic] breached the aforementioned duties." (*Id*. at ¶¶ 46-50) Court II is a claim for negligence, which asserts that [Defendant] and its past authorized transfer agents/stock registrars were under a duty to exercise reasonable care to keep accurate records of the certificates and/or common stock issued by Lam Research Corporation" and that they failed to exercise sufficient care in doing so. (*Id*. at ¶¶ 51-53) Plaintiffs request various forms of relief, including that: (1) Defendant "restore [] Plaintiffs' stock ownership records back on the corporate shareholder books"; (2) alternatively, that Defendant "issue a new stock certificate to [] Plaintiffs to replace the current stock ownership"; and (3) that Defendant pay dividends distributed to stockholders over the last seven years (allegedly amounting to approximately $309,000), which Plaintiffs never received. (*Id*. at 9; *see id*. at ¶ 43)

Defendant filed the instant Motion on June 23, 2023.  (D.I. 6)  The Motion was fully briefed as of July 13, 2023.  (D.I. 10)  On February 5, 2024, the parties jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings.  (D.I. 14)

## II.    DISCUSSION

As was noted above, with the Motion, Defendant seeks dismissal of Plaintiffs' claims under Rule 12(b)(6).  Defendant makes three arguments as to why this action should be dismissed pursuant to that Rule:  (1) Plaintiffs' claims fall within a forum selection clause (the "forum selection clause") in Defendant's bylaws ("Bylaws"), thereby requiring that this action must be dismissed and re-filed in the Delaware Court of Chancery ("Court of Chancery"); (2) Plaintiffs fail to state a claim for breach of fiduciary duty, in that the sole Defendant (i.e., Lam Research Corporation) is a corporation—and a corporation does not owe fiduciary duties to its shareholders pursuant to relevant Delaware law; and (3) Plaintiffs' claims are barred by the statute of limitations.  (D.I. 7 at 6)  For reasons the Court will set out below, it need only to address the first issue in order to conclude that dismissal is appropriate.

That first issue, as noted above, is an argument for dismissal premised on the assertion that a forum selection clause dictates that this case must be litigated in the Court of Chancery.  In *Atl. Marine Const. Co. v. U.S. Distr. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013), the Supreme Court of the United States held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*[.]"  571 U.S. at 60.  So although the Motion was filed pursuant to Rule 12(b)(6) in all respects, the Court will treat this issue as if it were brought as a motion to dismiss on *forum non conveniens* grounds. *See, e.g., Cultural Experiences Abroad, LLC v. Colon,* Civil Action No. 23-564-GBW-SRF,

5

2024 WL 492683, at *3 (D. Del. Feb. 8, 2024) (taking the same approach in a case where the

forum selection clause at issue purportedly required the claims to be filed in the Court of

Chancery), *report and recommendation adopted,* 2024 WL 1509211 (D. Del. Mar. 18, 2024); *In*

*re Pattern Energy Grp. Inc. Sec. Litig.*, C.A. No. 20-275-MN-JLH, 2022 WL 263312, at *10 (D.

Del. Jan. 27, 2022) (same), *report and recommendation adopted,* 2022 WL 957761 (D. Del. Mar.

30, 2022).[3]  To that end, below the Court will first set out the relevant legal standards regarding

how to assess a motion to dismiss filed on *forum non conveniens* grounds in light of the

existence of a forum selection clause.  Thereafter, it will address the merits of Defendant's

arguments for dismissal.

> **A.    Legal Standards Relating to a Motion to Dismiss Brought on *Forum Non Conveniens* Grounds in Light of the Existence of a Forum Selection Clause**

In assessing a motion to dismiss for *forum non conveniens* in cases involving a forum-

selection clause that points to state or foreign forums, the Court must initially consider whether

---

[3]    In *Atl. Marine*, the Supreme Court declined to consider whether a party could obtain dismissal under Rule 12(b)(6) based on the premise that a valid forum selection clause binds the parties to litigate in another forum.  571 U.S. at 61.  And so, in light of the guidance in *Atl. Marine*, the Court will consider this motion to be filed pursuant to the *forum non conveniens* doctrine and will make use of the factors that relate to that doctrine in resolving the Motion.  *See Collins ex rel. Herself v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017) ("Atlantic Marine clarified that forum non conveniens is the proper mechanism for enforcing a forum selection clause that points to a state or foreign forum."); *but see Podesta v. Hanzel*, 684 F. App'x 213, 216-17 (3d Cir. 2017) (indicating that Rule 12(b)(6) could be a valid mechanism for enforcing a forum selection clause where the clause allowed for suit in either a state or federal forum, and advising that in resolving such a motion, a court should focus on the motion's function, not its caption) (citing *Atl. Marine*, 571 U.S. at 61).  That said, the Court does not think that the outcome would be any different were the Court to have considered the Motion using Rule 12(b)(6)-related standards, and neither party has suggested otherwise.  (D.I. 7 at 6); *see also Besthoff derivatively & ex rel. World Water Works Holdings, Inc. v. Mitta*, Civil Action No.17-1449 (JMV) (MF), 2018 WL 3425733, at *6 (D.N.J. July 16, 2018); *Breslow v. Klein*, Civil Action No. 17-6912, 2018 WL 3031854, at *6-7 (D.N.J. June 19, 2018).

the forum selection clause:  (1) is enforceable; and (2) applies to the claim(s) at issue.[4]  *In re Pattern Energy*, 2022 WL 263312, at *10 (citing *Collins*, 874 F.3d at 180-81).  An enforceable forum selection clause that encompasses the claims at issue "should be given effect '[i]n all but the most unusual cases.'"  *Id*. at *10 (quoting *Atl. Marine*, 571 U.S. at 66; *Collins*, 874 F.3d at 186-87).

With regard to enforceability, a forum selection clause is unenforceable if "the party objecting to its enforcement establishes (1) that it is the result of fraud or over-reaching, (2) that enforcement would violate a strong public policy of the forum [in which the suit was brought], or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable."  *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983), *overruled on other grounds*, *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989); *see also Collins*, 874 F.3d at 181; *In re Pattern Energy*, 2022 WL 263312, at *10.  In assessing whether a forum selection clause applies to the claims at issue, the party seeking dismissal bears the burden of proving that the parties and claims are subject to the clause.  *See Brit. Telecomms. PLC v. Fortinet Inc.*, 424 F. Supp. 3d 362, 368 (D. Del. 2019) (citing *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009)).  A court considering the interpretation of a forum selection clause applies principles of contract law to determine the clause's scope, and then "decides 'whether the claims

---

[4]       The issue of whether to enforce a forum selection clause is determined under federal law, and the issue of whether the claim is within the scope of the forum selection clause is determined under relevant state law (here, Delaware contract law).  *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (citing cases); *see also Collins*, 874 F.3d at 181-83.

and the parties involved in the suit are subject' to the clause." *Collins*, 874 F.3d at 180-81

(quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)).

If a forum selection clause is deemed to be enforceable and applicable to the claims at

issue, a court thereafter considers two factors to assess the doctrine of *forum non conveniens*:  (1)

the availability of an adequate alternative forum where the defendant is amenable to process and

where plaintiffs' claims are cognizable; and (2) the relevant public interest factors affecting the

convenience of the forum.  *Id*. at 186; *Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185,

194, 198 (D. Del. 2022).[5]  As to the latter issue, the party seeking to litigate outside the

preselected forum "bear[s] the burden of showing that public-interest factors overwhelmingly

disfavor a transfer."  *Atl. Marine*, 571 U.S. at 67; *cf. Brit. Telecomms.*, 424 F. Supp. 3d at 368.[6]

## B.    Defendant's Arguments for Dismissal

With these applicable legal standards now in mind, the Court turns to the merits of

Defendant's arguments.  Defendant asserts that Plaintiffs' claims should be dismissed on *forum*

*non conveniens* grounds because the forum selection clause in Defendant's Bylaws mandates that

---

[5]    Typically, the *forum non conveniens* analysis considers four factors:  "(1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum."  *Collins*, 874 F.3d at 186.  However, if an enforceable forum selection clause exists that applies to the claims at issue, the first and third factors are not afforded any weight.  *Id*.  In such circumstances, courts should only consider the second and fourth factors, and these should overcome a valid forum selection clause in only the most "'unusual' and 'extraordinary' circumstances."  *Id*. (quoting *Atl. Marine*, 571 U.S. at 62, 64).

[6]    In deciding a motion to dismiss on *forum non conveniens* grounds, a court may consider materials outside of the pleadings, including affidavits and exhibits.  *See Alonso Hidalgo v. Agustawestland Phila. Corp.*, CIVIL ACTION NO. 20-6393, 2024 WL 388381, at *1 n.2 (E.D. Pa. Feb. 1, 2024) (collecting cases); *see also Wit Software v. Talkdesk, Inc.*, Civil Action No. 23-94-WCB, 2023 WL 3454193, at *3 n.4 (D. Del. May 15, 2023).

the claims be heard in the Court of Chancery. (D.I. 7 at 6-11) To that end, the forum selection clause provides as follows:

> Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware (the "Court of Chancery") shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the corporation; (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the corporation to the corporation or the corporation's stockholders; (iii) any action asserting a claim arising pursuant to any provision of the General Corporation Law of Delaware ("DGCL") or the Certificate of Incorporation or these Bylaws (including, without limitation, any action to interpret, apply, enforce or determine the validity of any provision of the Certificate of Incorporation or these Bylaws) or as to which the DGCL confers jurisdiction on the Court of Chancery; or (iv) any action asserting a claim governed by the internal affairs doctrine.

(*Id.*, ex. A at § 8.13)[7]

In the parties' briefing, they address both whether the forum selection clause applies to the claims at issue and whether the clause is enforceable.[8] So below, the Court will take up both of these issues in turn.

###        1.        Whether the Forum Selection Clause Applies to the Claims at Issue

---

[7]        The Court quotes from the version of Defendant's Bylaws that were amended and restated as of May 11, 2022; Defendant attached this version of the Bylaws as an exhibit to its opening brief on the Motion. (D.I. 7 at 7-8 & n.8; *id.*, ex. A) Plaintiffs attached as an exhibit to their Complaint a prior version of Defendant's Bylaws (i.e., a version that was amended and restated as of May 12, 2020). (*Id.* at 8 n.8; *see also* D.I. 1, ex. D) The forum selection clauses in both versions of the Bylaws are identical. (D.I. 1, ex. D at § 8.13; D.I. 7, ex. A at § 8.13) Herein, the Court will rely on the most recent version of the Bylaws supplied by Defendant.

[8]        In their briefing, Plaintiffs do not otherwise argue that a forum selection clause found in Defendant's Bylaws (if enforceable, and if applicable to the claims at issue) should not bind them. Indeed, in their Complaint, Plaintiffs repeatedly cite to Defendant's Bylaws in arguing that certain of the Bylaws have applicability to Plaintiffs and to this lawsuit. (*See* D.I. 1 at ¶¶ 36, 45 (relying on Defendant's Bylaws to establish duties purportedly owed by Defendant to Plaintiffs))

Defendant makes three separate arguments as to why the forum selection clause applies to Plaintiffs' claims: (1) Plaintiffs have included a request for relief that asks the Court to order the issuance of a new stock certificate, which shows that this is an action asserting a claim arising "pursuant to a[] provision of the [DGCL]"—i.e., the DGCL's provision governing the issuance of replacement stock certificates of Delaware corporations; (2) Plaintiffs assert a claim "of breach of fiduciary duty"; and (3) Plaintiffs claims are "governed by the internal affairs doctrine"—in that they implicate matters involving the relationship between Defendant and one of its asserted shareholders. (D.I. 7 at 8; *see also id.*, ex. A at § 8.13) In their responsive briefing, Plaintiffs only took issue with the third of these arguments (i.e., the one relating to the applicability of the internal affairs doctrine). In other words, Plaintiffs did not clearly address on the merits Defendant's first or second arguments as to why the forum selection clause applies to Plaintiffs' claims. (D.I. 9; D.I. 10 at 2 (Defendant noting the same)) As a result, Plaintiffs have waived or forfeited any assertion that its Complaint does not fall within the ambit of the Bylaws for those two reasons. *See, e.g., Jackson v. NuVasive, Inc.*, Civil Action No. 21-53-RGA, 2023 WL 6387866, at *2 (D. Del. Sept. 29, 2023); *F45 Training Pty. Ltd. v. Body Fit Training USA Inc.*, C.A. No. 20-1194-LPS, 2021 WL 2779130, at *2 (D. Del. July 2, 2021); *RBATHTDSR, LLC v. Project 64 LLC*, Civil Action No. 19-1280-RGA, 2020 WL 2748027, at *4 n.2 (D. Del. May 27, 2020).

The Court could stop there as to this issue (in light of Plaintiffs' waiver/forfeiture of any arguments to the contrary). However, the Court also notes that, at a minimum, Defendant's assertion that the Complaint states "a claim arising pursuant to any provision of the [DGCL]"

appears to be correct on the merits.  (D.I. 7 at 11)[9]  In the Complaint, Plaintiffs' prayer for relief

includes a request for the Court to "order [Defendant to] issue a new stock certificate to Plaintiffs

to replace the current stock ownership held by Plaintiffs[.]"  (D.I. 1 at 9)  Section 168 of the

DGCL, in turn, provides the Court of Chancery with the authority to "require a Delaware

corporation to issue a new stock certificate if the owner is able to satisfy the court that the

original certificate was lost, stolen, or destroyed."  *Petroleos de Venezuela, S.A. v. PDV Holding,

Inc.*, 306 A.3d 572, 574-75 (Del. Ch. 2023); *see Scott v. Ametek, Inc.*, 277 A.2d 714, 715 (Del.

Ch. 1971) (finding the remedy of issuing a new stock certificate when one was lost, destroyed or

stolen had formerly been a remedy in the Delaware Superior Court, until Section 168 was

---

[9]       The Court is less sure about Defendant's argument that this is an "action asserting
a claim of breach of fiduciary duty owed by any director, officer or other employee of the
corporation to the corporation or the corporation's stockholders[.]"  (D.I. 7, ex. A at § 8.13)
Technically, in Count I, Plaintiffs do not assert a claim for breach of fiduciary duty owed by a
"*director*, *officer* or *other employee*" of Defendant's corporation; instead, there Plaintiffs assert
that the fiduciary duty at issue is owed by the *corporation itself*.  (D.I. 1 at ¶ 48 (alleging that
"Lam Research Corporation . . . owed Plaintiffs a fiduciary duty"))  And Plaintiffs have sued
only Defendant as a corporation—not any of Defendant's directors, officers or other employees.
*Cf. Anderson v. GTCR, LLC*, C.A. No. 16-10-LPS, 2016 WL 5723657, at *4-5 (D. Del. Sept. 29,
2016) (finding that a forum selection clause did not encompass the plaintiff's claim for breach of
fiduciary duty, where the clause required that "any action asserting a claim of breach of a
fiduciary duty owed by any director or officer of the Corporation" must be brought in the Court
of Chancery, but the plaintiff's claims were premised on the assertion that a controlling
shareholder—not a director or an officer—had committed the relevant breach) (emphasis
omitted).  Indeed, as noted above, one of the other bases for Defendant's Motion is that Count I
must be dismissed because:  (1) Plaintiffs only sued Defendant therein; and (2) a corporation
does not legally owe fiduciary duties to its shareholders pursuant to Delaware law.  (D.I. 7 at 11-
12)

        Now, as the Court will later discuss, Defendant is surely correct that under Delaware law
Plaintiffs cannot actually bring a breach of fiduciary duty claim against a corporation.  (*See id.*)
In their briefing, Plaintiffs respond to this reality by suggesting that they might amend their
claims to allege a breach of fiduciary duty by Defendant's "officers/directors."  (D.I. 9 at 9)  Of
course, if Plaintiffs did that, then their Complaint would fall squarely within the "breach of
fiduciary duty" prong of the forum selection clause as well.

amended to confer jurisdiction upon the Court of Chancery to order replacement of stock certificates); *see also* 8 Del. Code § 168(a).  Thus, it seems that it is right to say that Plaintiffs' claims here "aris[e] pursuant" to Section 168—in that they relate to this portion of the DGCL and they seek a form of relief that is explicitly permitted by this statutory provision.  And again, as noted above, Plaintiffs did not provide any understandable, contrary argument on this point in their briefing.

With Defendant having established that the forum selection clause applies to the claims at issue, the Court will move on to assess whether the clause is enforceable.

## 2.    Enforceability of the Forum Selection Clause

In their briefing, Plaintiffs assert that the forum selection clause at issue is unenforceable. As the Court previously noted above, a party making such an argument may try to establish unenforceability by showing that one of three circumstances is at play.  *See supra* at 7.  Here, Plaintiffs do not assert that the first or second of those circumstances (i.e., that the forum selection clause is a "result of fraud or overreaching" or that enforcement would "violate a strong public policy of the forum") are implicated.  *Coastal Steel*, 709 F.2d at 202.  Instead, Plaintiffs focus on the third—by arguing that here, enforcement would "result in litigation so seriously inconvenient as to be unreasonable." *Id*.; (*see also* D.I. 9 at 5-7)  More specifically, Plaintiffs claim this is so because requiring them to litigate their claims in the Court of Chancery—a court of equity that convenes bench trials, not jury trials—would wrongly and unreasonably deprive them of their constitutional right to a jury trial pursuant to the Seventh Amendment to the United States Constitution.  (D.I. 9 at 5-7)  Plaintiffs argue that that both counts in the Complaint (Count

12

I's claim for breach of fiduciary duty[10] and Count II's claim for negligence) are legal claims for which they have a Seventh Amendment jury trial right. (D.I. 9 at 5-7); *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40-42 (1989) (noting that the Seventh Amendment confers a right to jury trial to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered") (internal quotation marks and citation omitted, emphasis in original).[11]

        As to this third "unreasonable" prong of the enforceability inquiry, the Supreme "Court intended this to be a strict standard in favor of enforcement." *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir. 1986). Enforcement should "be denied only where it would be '*seriously* inconvenient,' . . . such that the resisting party 'would be effectively deprived of its day in court.'" *Id*. (quoting *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 16-18 (1972)) (emphasis in original). In light of this high standard, the Court concludes that the forum selection clause at issue here is enforceable.

---

[10]    The Court does not need to reach the issue in light of the nature of its resolution of the Motion, but (as was noted above) Plaintiffs' breach of fiduciary duty claim would surely need to be amended or altered in whatever court it were to proceed in. Again, that is because (as Defendant argues), Count I alleges that Defendant (a corporation) owed fiduciary duties to Plaintiffs—and yet a corporation does not owe fiduciary duties to its stockholders pursuant to relevant Delaware law. (D.I. 7 at 11-12; D.I. 9 at 9; D.I. 10 at 8)

[11]    Although Plaintiffs repeatedly reference their right to a jury trial in this Court, they have not yet actually demanded a trial by jury in this case. Indeed, when Plaintiffs filed the case, they included paperwork that seemed to suggest that they would *not* be seeking a jury trial here. (D.I. 10 at 6 (citing D.I. 1-6)) That said, Plaintiffs assert that they have, at a minimum, until two weeks after the filing of Defendant's Answer in order to formally make such a jury trial demand (and such an Answer has not yet been filed, in light of the pendency of this Motion). (D.I. 9 at 7 (citing Fed. R. Civ. P. 38(b)))

To explain why, the Court starts by noting that the question of whether Plaintiffs would have a right to a jury trial on their claims *in the abstract* is not really the right question to be asking. (D.I. 10 at 6 (Defendant arguing that "the issue to be decided now is not whether Plaintiffs have a right to a jury trial but instead whether Plaintiffs' claims should be heard in this venue")) This is a case where Plaintiffs allege that Turner was and is a shareholder of Defendant. And pursuant to Defendant's Bylaws, its shareholders have agreed to be bound by a forum selection clause—a clause that points to the Court of Chancery as the appropriate venue to resolve disputes like these. Forum selection clauses like this one found in a corporation's bylaws are contractually binding, irrespective of whether the party against whom they are enforced is a signatory (so long as they are not the result of fraud or overreaching, which is not alleged here). *See Mack v. Rev Worldwide, Inc.*, C.A. No. 2019-0123-MTZ, 2020 WL 7774604, at *8 (Del. Ch. Dec. 30, 2020) (explaining that by purchasing stock, a stockholder contractually assents to be bound by bylaws that are valid under the DGCL, such that a unilaterally adopted forum selection clause in a corporation's bylaws may be enforced according to its terms); *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 958 (Del. Ch. 2013) (same); *see also Airgas, Inc. v. Air Prod. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010) ("Corporate charters and bylaws are contracts among a corporation's shareholders"). That is all to say that what we have here is a scenario where (assuming Plaintiffs' allegations are correct that Turner is a shareholder of Defendant), Turner *freely contractually assented* to pursue the claims at issue in another court (i.e., the Court of Chancery)—a court that happens to proceed via bench trials, not jury trials, as to such claims. *Cf. Amano Cincinnati Inc. v. AMG Employee Mgmt. Inc.*, Civil Case No. 09-3821 (FSH), 2009 WL 10741407, at *3 n.10 (D.N.J. Oct. 26, 2009) (rejecting the argument that a forum selection clause, which required arbitration of a plaintiff's claims, was unenforceable

because it amounted to a waiver of the constitutional right to a jury trial, because "courts have found that 'the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate'") (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 223 (3d Cir. 2007)); *Alternative Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*, No. Civ.SA05CA0172-XR, 2005 WL 1862631, at *13 (W.D. Tex. July 8, 2005) (finding an agreement to litigate in a forum that does not provide a jury trial eliminates the right to a jury trial, and holding that "the Seventh Amendment is not implicated by a contractual provision that precludes access to an Article III forum") (internal quotation marks and citation omitted).

Moreover, there is nothing "unreasonable" or unenforceable about a forum selection clause that promotes such a result. Courts that have faced similar inquiries—i.e., that have assessed whether a forum selection clause is unenforceable pursuant to the "unreasonableness" prong since it requires that certain claims be litigated in a forum that does not permit jury trials— have regularly upheld the viability of such clauses. For example, in *Wong v. PartyGaming Ltd.*, 589 F.3d 821 (6th Cir. 2009), the plaintiffs (who alleged, on behalf of themselves and a proposed class, claims for breach of contract, misrepresentation and violations of Ohio consumer protection laws) had agreed to a forum selection clause when they registered on defendant's website. 589 F.3d at 828. That forum selection clause required that all disputes between the plaintiffs and the defendant had to be brought in the courts of Gibraltar (which do not permit jury trials and arguably do not allow for class action suits); nevertheless, the plaintiffs filed suit in federal court in Ohio. *Id*. at 824-25, 829. In upholding a district court's dismissal of the case on *forum non conveniens* grounds, the United States Court of Appeals for the Sixth Circuit concluded that enforcement of the forum selection clause would not be so inconvenient as to be unjust or unreasonable. *Id*. at 829-30. In so doing, the *Wong* Court noted that "lack of jury trials

15

does not render a forum inadequate"—and that such a conclusion made sense, since "almost all non-U.S. forums would be inadequate under plaintiffs' argument because few countries outside of the United States offer jury trials in civil cases." *Id.* at 829. The Sixth Circuit concluded by noting that "[a]side from their claims that a Gibraltar forum forecloses the possibility of a jury trial or class-action suit[ which were not enough to win the day], plaintiffs have failed to show how litigating in Gibraltar would be such an inconvenient forum to yield it unjust or unreasonable." *Id.* at 829-30 (citing cases). In other words, the *Wong* Court was saying that where the non-federal forum at issue permitted the plaintiffs to litigate the substance of their legal claims—even if the forum's legal process was structured differently than that of a federal district court—then the lack of a jury trial itself in the alternate forum was insufficient to render the forum "unreasonable" or "unjust" in this context. *See also Interamerican Trade Corp. v. Companhia Fabricadora De Pecas*, 973 F.2d 487, 489 (6th Cir. 1992) (same, as to a forum selection clause requiring litigation to be pursued in Brazil—a country whose courts do not allow for jury trials). Indeed, various other federal courts have come to similar conclusions in like circumstances. *See, e.g., Russel v. De Los Suenos*, No. 13-CV-2018-BEN (DHB), 2014 WL 1028882, at *7 (S.D. Cal. Mar. 17, 2014) (finding that enforcement of a forum selection clause, which required that relevant claims be pursued in the courts of Mexico, was not unreasonable or unjust—even though Mexican courts do not permit jury trials and were asserted to be subject to great delay and to be corrupt, since a "forum is not inadequate merely because the law, or the remedy afforded, is less favorable in a foreign forum") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247 (1981)); *cf. Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) (upholding a district court's dismissal of claims on *forum non conveniens* grounds, and rejecting the plaintiff's suggestion that the alternative forum in which the claims would be

16

litigated (the courts of France) was wanting since he would not receive a jury trial in those

courts, as this was not a factor that should be given any "substantial weight" in the *forum non*

*conveniens* analysis).[12]

Therefore, Plaintiffs' assertion that they are entitled to a jury trial on legal claims, without

more, is insufficient to render the forum selection clause here unenforceable.

### 3.    Other Factors Regarding the *Forum Non Conveniens* Doctrine

As the Court noted above, if a forum selection clause is deemed to be enforceable and

applicable to the claims at issue, then a court should consider two factors to assess the doctrine of

*forum non conveniens*:  (1) the availability of an adequate alternative forum where the defendant

is amenable to process and plaintiffs' claims are cognizable; and (2) the relevant public interest

factors affecting the convenience of the forum.

With regard to the first of these factors, there can be no real dispute that Plaintiffs' claims

are cognizable in the Court of Chancery.  Plaintiffs' breach of fiduciary duty claim in Count I is

typically understood to be an equitable claim, not a legal claim.  *See QC Commc'ns Inc. v.

Quartarone*, Civil Action No. 8218-VCG, 2013 WL 1970069, at *1 (Del. Ch. May 14, 2013) (a

claim for breach of fiduciary duty is "an equitable claim—perhaps *the* quintessential equitable

claim") (emphasis in original); *see also Damage Recovery Sys., Inc. v. Tucker*, No. Civ.02-1647-

SLR, 2005 WL 388597, at *2 (D. Del. Feb. 2, 2005) ("Although plaintiff has requested money

---

[12]    This has been the case even in circumstances where the forum selection clause at
issue (like here) is applied to a party who did not actually negotiate the contractual terms itself.
*See, e.g.*, *Wong*, 589 F.3d at 829 (finding that a forum selection clause is not unreasonable
simply because it appears in a non-negotiated consumer contract) (citing *Carnival Cruise Lines,
Inc. v. Shute*, 499 U.S. 585, 594 (1991)); *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10,
22 (1st Cir. 2009) (same); *Lanier v. Syncreon Holdings, Ltd.*, No. 11-14780, 2012 WL 3475680,
at *7 (E.D. Mich. Aug. 14, 2012) (same).

damages, the court finds that breach of fiduciary duty has historically been adjudicated in courts of equity.  Defendant does not have the right to a trial by jury for plaintiff's aiding and abetting breach of fiduciary duty claim."); (D.I. 10 at 6).  As a result, it is the type of claim that the Court of Chancery assesses regularly.  And pursuant to the "clean up" doctrine, the Court of Chancery also adjudicates claims (like Count II's negligence claim) that might otherwise be tried before a jury, were it to have been brought alone.  *See FirstString Rsch., Inc. v. JSS Med. Rsch.*, C.A. No. 2020-0332-KSJM, 2021 WL 2182829, at *10 & n.68 (Del. Ch. May 28, 2021) (citing *Acierno v. Goldstein*, No. 20056, 2004 WL 1488673, at *5 (Del. Ch. June 25, 2004)); *TransPerfect Glob., Inc. v. Ross Aronstam & Moritz LLP*, C.A. No. 2021-0065-KSJM, 2022 WL 803484, at *9 (Del. Ch. Mar. 17, 2022).[13]

As to the second factor, Plaintiffs do not suggest any relevant public interest factors that would negatively affect the convenience of the proposed forum.  *See Cousins ex rel. Est. of Cousins v. Sikorsky Aircraft Corp.*, — F. Supp. 3d. —, 2024 WL 4429061, at *14 (E.D. Pa. Sept. 30, 2024) (listing these factors as including court congestion, the forum's interest in having local disputes decided at home, the interest in having the case decided in the forum whose law will govern the case, the avoidance of unnecessary conflict of laws problems, and the unfairness of burdening citizens with jury duty in a forum having no relation to the dispute).  And the Court cannot see how any of these factors would militate against dismissal.  After all, the Court of Chancery is an important court of equity in Delaware—the state where Defendant is a resident corporation.  Plaintiffs assert that they are stockholders of that corporation.  And Delaware's

---

[13]    Defendant, a Delaware corporation, is certainly amenable to process in the Court of Chancery, and no party suggests otherwise.

state courts surely have a strong interest in resolving this corporation-focused dispute, by applying that state's laws.

Thus, there has been no showing by Plaintiffs that these public interest factors disfavor a transfer at all (let alone that they do so "overwhelmingly"). *Atl. Marine*, 571 U.S. at 67.

## III.    CONCLUSION

With the record indicating that the claims at issue fall within the scope of an enforceable forum selection clause, and because such clauses should be given effect "[i]n all but the most unusual cases[,]" *Atl. Marine*, 571 U.S. at 66, the Court GRANTS Defendant's Motion on *forum non conveniens* grounds.  An appropriate Order will issue.